# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-IA-01260-SCT

*JOHN K. HAMILTON*

*v.*

*KIDRON S. WISE YOUNG*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/2015 |
| TRIAL JUDGE: | HON. TALMADGE D. LITTLEJOHN |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM WAYNE SMITH |
| ATTORNEYS FOR APPELLEE: | ROY O. PARKER, JR. |
| | T. K. MOFFETT |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND RENDERED - 02/16/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. This interlocutory appeal arises from the registration of an Ohio-issued divorce decree in the Lee County Chancery Court and a subsequent petition for modification by the obligee, a Mississippi resident. Asserting the continuing and exclusive jurisdiction of the Ohio court in matters involving the modification and alteration of the decree, the obligor-father appeals the chancery court's denial of his motion to dismiss the obligee-mother's complaint for modification of the decree. Reviewing the procedural history and the facts of the case, we find that (1) neither the Ohio court nor the parties consented in writing to the transfer of jurisdiction, and (2) because evidence indicates that the Ohio court never relinquished

jurisdiction, that court is the proper forum for proceedings on modification. Thus, this Court reverses the chancery court's ruling and enters judgment in favor of the father, dismissing the mother's complaint for lack of jurisdiction.

## FACTS AND PROCEDURAL HISTORY

¶2. On July 10, 2010, the Court of Common Pleas in Muskingum County, Ohio, entered a judgment granting the divorce of Appellant John Hamilton and Appellee Kidron Wise Young. The judgment entry and divorce decree dissolved the parties' marriage and provided for the care, custody, control, and support of their minor child, Adelie Wise-Hamilton. Through the decree, Young received residential parent and legal custodian status with regard to Adelie. The decree made Hamilton the nonresidential parent with requirements to abide by a parenting schedule as outlined by the parties' separation agreement.

¶3. Some time after the divorce became final, Young and Adelie moved to Mississippi. Once settled, Young registered the 2010 divorce decree with the Lee County Chancery Court, in accordance with Mississippi Code Sections 93-25-81 and 93-25-83. By registering the decree with a Mississippi court, the order became enforceable in the same manner and subject to the same procedures as an order issued by a court in this state. Miss. Code Ann. § 93-25-85 (Rev. 2013). However, while the Lee County court gained the ability to enforce the decree, the registration did not authorize it to modify or amend the order as long as the Ohio court–the issuing tribunal–maintained jurisdiction. *Id.* Eight months later, but prior to an entry of

2

registration by the court, Young amended her complaint to include a request that the court assume jurisdiction of the case pursuant to Mississippi Code Section 93-25-101.[1]

¶4. In an order dated July 30, 2013, *nunc pro tunc* July 15, 2013, the Lee County Chancery Court registered the Ohio decree, granting full faith and credit to the judgment. Additionally, without elaboration, the court assumed jurisdiction "of all matters relating to the minor child including, but not limited to: custody, visitation, and support, pursuant to Section 93-25-101." The order was certified and shared to be "spread upon the minutes" of the Ohio court.

¶5. Less than one month later, on August 21, 2013, the Ohio court held a hearing on Hamilton's motion to modify parental rights and responsibilities. Without reference to the Lee County court's July 30th order, the Ohio court ruled that, because Hamilton still resides in Muskingum County, it maintains jurisdiction over all matters relating to Adelie. Finding that the parties had reached an agreement as to all issues presented, the court modified the original divorce decree to represent that the parties reside in separate states and entered an order reflecting the arrangement outlined in the judge's settlement memorandum. Signed by both parties and their attorneys, this memorandum modified the original parenting arrangement and its visitation schedule. Although not dated when signed, the order on this hearing was entered by the clerk of Ohio court on September 6, 2013.

¶6. In November 2014, the Ohio court again amended the 2010 decree. Upon the recommendation of the Muskingum County Department of Job and Family Services, Child

---

[1] The relevant portion of Mississippi Code Section 93-25-101 describes the residency requirements for this state to modify a child support order issued in another state, after having been registered here. Miss. Code Ann. § 93-25-101 (Rev. 2013). Those requirements are detailed in Issue I, as applicable.

3

Support Division, the court decreased the amount of monthly support Hamilton was required to provide for Adelie's care and maintenance. These changes in support were to be effective retroactively, beginning on November 1, 2014.

¶7. Aggrieved, in May 2015, Young filed in Lee County Chancery Court a complaint for modification of the September 2013 and November 2014 Ohio orders. Hamilton then timely responded with a motion to dismiss the action based on the Ohio court's continuing, exclusive jurisdiction over the matter. Citing the Muskingum County court's September 2013 order, Hamilton asserted that because he continues to reside where the cause of action originated, the Ohio court maintains jurisdiction over matters involving Adelie. The Lee County Chancery Court held a hearing on the matter on August 12, 2015, and ultimately denied Hamilton's motion. Referencing a conversation held between the Lee County chancellor and the Ohio court prior to the July 2013 order, the court ruled that the Ohio judge had relinquished jurisdiction, upon which the Lee County Chancery Court assumed jurisdiction and granted full faith and credit to the Ohio divorce decree. The court also held that, although Hamilton referenced the September 2013 order as an indication of Ohio's continuing jurisdiction, that order was not dated and therefore not proper.

¶8. On appeal, Hamilton presents one issue and asks this Court:

    **I.    Whether the Lee County Chancery Court erred when it denied the Motion to Dismiss for Lack of Jurisdiction under the Uniform Child Custody, Jurisdiction, and Enforcement Act.**

In her response, Young presents two additional issues for review:

4

II.    **Whether Hamilton is estopped from challenging an order of the Chancery Court two years after its entry, by filing a Motion to Dismiss for lack of jurisdiction.**

III.   **Whether Mississippi's jurisdiction in this matter can be challenged by a court in Ohio without finding that Ohio is the more convenient forum.**

Because these issues contain mixed requirements for review, the standard of review for each issue is addressed, independently, prior to its analysis.

## LAW AND ANALYSIS

I.    **Whether the Chancellor erred in denying the Motion to Dismiss for Lack of Jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act.**

¶9.    Jurisdictional questions involving divorce decrees, child-support agreements, and custodial arrangements are issues familiar to this Court, and several cases before today have asked similar questions. *See Edwards v. Zyla*, 2016 WL 6822419 (Miss. 2016)(Motion for rehearing denied 2/2/17; mandate issued 2/9/2017); *Grumme v. Grumme*, 871 So. 2d 1288 (Miss. 2004); *Dep't of Human Servs. v. Shelnut*, 772 So. 2d. 1041 (Miss. 2000); *Bradshaw v. Bradshaw*, 418 So. 2d 64 (Miss. 1982). What sets this action apart from those previously decided is the question of fact surrounding the apparent waiver of jurisdiction by the Ohio court, and whether that apparent waiver effectively granted the Lee County Chancery Court authority over all issues related to the minor child. We hold that it does not.

¶10.   While Hamilton asks the Court to review the jurisdictional issue under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) at the time of filing, the matter *sub judice* remained governed by both the UCCJEA and the Uniform Interstate Family

5

Support Act (UIFSA). Because Young's complaint involves a modification of both the visitation arrangement and child-support payments, the questions pertaining to custody are reviewed under the requirements of the UCCJEA, and those relating to child support are analyzed under the UIFSA.

### A. Standard of Review

¶11. "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *R.K. v. J.K.*, 946 So. 2d 764, 772 (2007) (citations omitted). While the issue of "whether a court had jurisdiction under the UCCJEA to hear a child-custody dispute is a question of law, which we review de novo[, . . . ] the factual findings underpinning the jurisdiction question are reviewed under the familiar substantial-evidence and abuse-of-discretion standards." *Clifton v. Shannon*, 93 So. 3d 70, 72 (Miss. Ct. App. 2012). Therefore, we review the issue of whether the chancellor properly assumed jurisdiction of this case under the UCCJEA and UIFSA using the de novo standard, while the facts of this matter are reviewed using substantial evidence and abuse of discretion standard.

### B. Child Support Modification under UIFSA

¶12. In his July 2013 order, the Lee County chancellor made a factual determination which ultimately vested jurisdiction of this matter in his court. After conferring with the Ohio court, the chancellor concluded that Ohio had relinquished jurisdiction, making the Lee County Chancery Court the appropriate forum for all matters related to the minor child. Thereafter, the chancellor assumed jurisdiction for future proceedings and issued an order to that effect,

without any discussion or written record of the meeting between the two courts. In light of the information in the record and the subsequent Ohio orders in September 2013 and November 2014, we find that the chancellor's uncorroborated assumption of jurisdiction in July 2013 is not enough to transfer the authority to modify an existing child support agreement from Muskingum County, Ohio, to Lee County, Mississippi.[2] Under Section 93-25-17(3) of UIFSA, Mississippi courts shall recognize the continuing, exclusive jurisdiction of the tribunal of another state which has issued a child support order pursuant to the act or a substantially similar law. Miss. Code Ann. § 93-25-17(3) (Rev. 2013). Having fully adopted UIFSA, the applicable Ohio statute is identical to Mississippi's law on modifying support orders of another state.[3] The laws provide, in pertinent part:

> (A) A tribunal of this state that has issued a child-support order consistent with the law of this state has and *shall exercise continuing, exclusive jurisdiction* to modify its child-support order *if the order is the controlling order and either of the following applies*:
>
> (1) *At the time of the filing of a request for modification, this state is the residence of the obligor*, the individual obligee, or the child for whose benefit the support order is issued.

---

[2] Moreover, both parties assented to the Ohio court's continuing and exclusive jurisdiction though its September 2013 order. While neither Young nor her attorney signed the order before it was entered, Young and her attorney signed the attached Settlement Memorandum, from which the judge crafted the order. Aside from the court's confirmation of jurisdiction on the matter, all material language included in the order is conveyed in that memo. By signing the memo and agreeing to the amendments, Young confirmed that the Ohio court maintained control over the matter and any changes to the divorce decree. Further, because Young failed to object to the order after it was entered, the ruling controls and the court's reiteration of jurisdiction is proper.

[3] *See* Miss. Code Ann. § 93-25-205 (Rev. 2013).

7

(2) Even if this state is not the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued, *the parties consent in a record or in open court* that the tribunal of this state may continue to exercise jurisdiction to modify its order.

(B) A tribunal or support enforcement agency of this state that has issued a child-support order consistent with the law of this state *may not exercise continuing, exclusive jurisdiction to modify the order if either of the following applies*:

> (1) All of the parties who are individuals *file consent in a record with the tribunal of this state* that a tribunal of another state that has jurisdiction over at least one of the parties who is an individual or that is located in the state of residence of the child may modify the order and assume continuing, exclusive jurisdiction.

> (2) Its order is not the controlling order.

Ohio Rev. Code Ann. § 3115.205 (emphasis added). Because "the purpose of UIFSA is to create certainty as to a single state that can modify the child support order," determination of continuing, exclusive jurisdiction and the authority to modify such judgments in Mississippi is analyzed under a multi prong statute. ***Grumme,*** 871 So. 2d at 1290. The statute–Mississippi Code Section 93-25-101[4]–allows "[t]he issuing state [to retain] continuing,

---

[4][U]pon petition, a tribunal of this state may modify a child support order issued in another state which is registered in this state, if, after notice and hearing, it finds that:

(a) The following requirements are met:

> (i) Neither the child, nor the obligee who is an individual, nor the obligor resides in the issuing state;
> (ii) A petitioner who is a nonresident of this state seeks modification; and
> (iii) The respondent is subject to the personal jurisdiction of the tribunal of this state; or

(b) This state is the state of residence of the child, or a party who is an individual is subject to the personal jurisdiction of the tribunal of this state, and

exclusive jurisdiction until another state (registering state) acquires jurisdiction. The continuing, exclusive jurisdiction of the issuing state remains in effect as long as one of the parents or the child still resides in the issuing state, unless the parties agree to the contrary." *Grumme*, 871 So. 2d at 1290. Therefore, for a Mississippi court to assume jurisdiction of another state's support judgment under UIFSA, no parties may remain in the state which issued the judgment; or, if a party remains in the issuing state, then both parties may agree–on the record–to the transfer of jurisdiction.

¶13.    As noted above, Hamilton has maintained continued residence in Muskingum County, Ohio, since the 2010 divorce decree was entered. Although Young and Adelie relocated to Mississippi, Hamilton's continued residence in Ohio fulfills the requirement for that state to maintain jurisdiction under UIFSA and Ohio Code Section 3115.205(A)(1). While the Lee County chancellor's July 2013 order asserts that his conversation with the Ohio judge vested in his court jurisdiction over all matters relating to the minor child, under UIFSA, this conversation was not enough. Both Hamilton and Young must have filed consent in a record with the Ohio court, stating that the Lee County Chancery Court has jurisdiction over either one of the parties or the minor child, and that it may modify the order and assume continuing, exclusive jurisdiction over the matter. Because neither the trial record nor the parties provide any evidence indicating such a submission was made to either the Muskingum County or the

> all of the parties who are individuals have filed consents in a record in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction.

Miss. Code Ann. § 93-25-101(Rev. 2013).

9

Lee County courts, it follows that the Lee County court never acquired jurisdiction over this case. Therefore, the chancellor's assertion of jurisdiction over child-support agreements fails under UIFSA, and any orders issued which indicate the contrary are reversed.

### C.     Custody Modification under the UCCJEA

¶14.     Under the UCCJEA, the process for a state to relinquish its jurisdiction on child-custody matters also is detailed through identical statutes in the Ohio and Mississippi codes. Mississippi Code Section 93-27-203 provides that "a Mississippi court 'may not modify a child custody determination made by a court of another state unless' a Mississippi court 'has jurisdiction to make an initial determination [of custody] under [Mississippi Code] Section 93–27–201(a) or (b)[.]' Thus, the first step in any analysis regarding a Mississippi court's right to modify another state's existing custody determination begins with determining whether a Mississippi court satisfies either Section 93-27-201(1)(a) or Section 93-27-201(1)(b)." *Edwards*, 2016 WL 6822419, at *3.

¶15.     Here, the Lee County Chancery Court meets the initial requirement under Section 93-27-201(a). That section mandates that Mississippi be "the home state of the child on the date of the commencement of the proceeding." Miss. Code Ann. § 93–27–201(1)(a) (Rev. 2013). For Mississippi to be considered the home state of the child, Adelie must have "lived with a parent for at least six consecutive months immediately before the commencement of the custody proceeding." *Edwards*, 2016 WL 6822419 at *3, (citing Miss. Code Ann. § 93-27-102(g)). Because Young and Adelie moved to Mississippi soon after the 2010 divorce decree was entered and remained within the state consecutively for more than six months prior to the

10

decree's registration in Mississippi, the Lee County court was correct in determining that Mississippi is Adelie's home state.

¶16.    Having satisfied subpart (a) of Section 93-27-201, the analysis to determine whether Lee County had jurisdiction to modify the custody arrangement continues to Section 93-27-203.    Part (a) of the statute provides that the chancellor could modify the custody determination if "the court of the other state determines it no longer has exclusive, continuing jurisdiction under [UCCJEA] Section 93-27-202, or that a court of this state would be a more convenient forum under [UCCJEA] Section 93-27-207." Miss. Code Ann. § 93-27-203(a) (Rev. 2013).    Part (b) provides that if "a court of this state or a court of the other state determines that neither the child, the child's parents, nor any person acting as a parent presently does not reside in the other state," then a court of this state may assume jurisdiction to modify a child custody determination made by the court of the other state.  *Id.* 93-27-203(b).  As discussed below, Hamilton's continuing residence in Muskingum County causes the analysis to fail under both (a) and (b).

¶17.    For part (a), the Act defines exclusive, continuing jurisdiction in Section 93-27-202, providing that a court which has made a child custody determination consistent with the UCCJEA will have jurisdiction over the determination until a court of that state determines that neither the child nor her parents have a significant connection with the state, or a court of that state or of another state determines that the child, the child's parents, and any person acting as a parent currently do not reside in that state.  Miss. Code. Ann. § 93-27-202 (Rev.

11

2013). In short, if the parents or the child neither reside in nor maintain a significant connection with the issuing state, then its jurisdiction can be terminated.

¶18. In applying this rule to Section 93-27-203(a) and (b), the chancellor's assumption of jurisdiction was in error. Because Hamilton has not moved from Muskingum County since the divorce decree was entered, the Ohio court maintained continuing and exclusive jurisdiction over the case. Additionally, in looking to the second half of part (a), for Mississippi to be considered a more convenient forum, the Ohio court must at the very least have determined that the Lee County court was the proper forum based on the factors outlined in Ohio Code Section 3127.21.[5] The record submitted to this Court contains no information indicating the Ohio court's consideration under the statute, nor do the parties assert that a motion was made to determine whether the Ohio court was a convenient forum. Accordingly, under the statute, the chancellor erred in assuming jurisdiction over any custody matters.

¶19. Finding that the chancellor erred under the applicable statutes, we also find that he erred under relevant Mississippi caselaw. As explained above, the evidence in the record does not support the view that either the Ohio court or the parties agreed to relinquish jurisdiction to the Lee County court. The record includes no information regarding the conversation between the chancellor and the Ohio court, and there is no information indicating that the parties assented to the change. Without more, Mississippi caselaw fails to support the chancellor's actions.

---

[5] This is Ohio's statute which reads identically to Mississippi Code Section 93-25-207. Both statutes allow for the parties to submit information to the court regarding forum convenience. The court considers this information, along with the statute's listed factors, in determining whether the current forum is appropriate.

¶20. While the issue before us is new to this Court, the Mississippi Court of Appeals, in

*Nelson v. Halley*, 827 So. 2d 42 (Miss. Ct. App. 2002), explained that consent to modify an

order from another court which has exclusive jurisdiction is to be effected through a filed

writing:

> [A state may modify a support order, if it finds that the] child or a party who is
> an individual is subject to the personal jurisdiction of the tribunal of this state
> and all of the parties who are individuals have filed written consents in the
> issuing tribunal for a tribunal of this state to modify the support order and
> assume continuing, exclusive jurisdiction over the order.

*Halley*, 827 So. 2d at 49-50 (quoting Miss. Code Ann. § 93-25-101(1)(b) (Supp. 2001)).[6] The

chancellor in today's case neither required consent from the parties nor submitted minutes of

his conference with the Ohio court to the record. Further, the Ohio hearing–which took place

just one month after the judgment was registered in Mississippi–reasserted jurisdiction in

Muskingum County, amending the decree and adjusting the parties' visitation arrangement.

The November order–issued one year later by the Ohio court–modified Hamilton's child-

support obligations, again indicating that the Ohio court had not waived its jurisdiction.

These subsequent orders and the lack of recorded consent between the courts and the parties

indicate that the chancellor's assumption of jurisdiction goes "clearly against logic and effect

---

[6]The revised version of this statute (applicable to this case) is substantially similar:

> (b) [A state may modify a support order, if it finds that this] state is the state of
> residence of the child, or a party who is an individual is subject to the personal
> jurisdiction of the tribunal of this state, and all of the parties who are individuals have
> filed consents in a record in the issuing tribunal for a tribunal of this state to modify
> the support order and assume continuing, exclusive jurisdiction.

Miss. Code Ann. § 93-25-101(1)(b) (Rev. 2013).

of such facts as are presented," suggesting the chancellor committed an abuse of discretion. *Douglas v. Burley,* 134 So. 3d 692, 697 (Miss. 2012).[7]

¶21. Therefore, because Hamilton resides in the state with continuing and exclusive jurisdiction over this matter, and neither the parties nor the Ohio court consented–on the record–to transferring jurisdiction to the Lee County Chancery Court, the Ohio court neither waived nor relinquished its control over matters pertaining to the parties' divorce decree or the care of the minor child. For these reasons, we hold that the chancellor erred in denying Hamilton's motion to dismiss.

> **II.** **Whether the Appellant is estopped from challenging an order of the Chancery Court two years after its entry, by filing a Motion to Dismiss for lack of jurisdiction.**

¶22. This Court employs a *de novo* standard of review when considering the appeal of a motion to dismiss. *Johnson v. Thomas ex rel. Polatsidis,* 982 So. 2d 405, 409 (Miss. 2008). Likewise, it uses the same standard when determining questions of law including limitations issues, timeliness, and standing. *Mitchell v. Progressive Ins. Co.,* 965 So. 2d 679, 682 (Miss. 2007).

¶23. Following Young's registration of the decree and support order, Hamilton submitted to the personal jurisdiction of the court for purposes of enforcement of the decree and nothing more. Under UIFSA, "[t]he proper procedure to be followed by a foreign jurisdiction seeking

---

[7] Mississippi Court of Appeals cases *Nelson v. Halley*, 827 So. 2d 42 (Miss. Ct. App. 2002) and *Gowdey v. Gowdey*, 825 So. 2d 67 (Miss. Ct. of App. 2002) present similar scenarios regarding UIFSA and UCCJEA governed issues in which the court determined that Mississippi courts could not assume jurisdiction over child-support and custody arrangements when the court of another state maintained exclusive and continuing jurisdiction. Directly applicable to the case at hand, these decisions confirm the chancellor's error if the Court decides that he independently transferred jurisdiction to Lee County.

enforcement of a child support order is to send a request for registration with the order to the appropriate tribunal in Mississippi. Miss. Code Ann. § 93-25-83 (Supp.1999). A registered order 'is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state.' " **Shelnut**, 772 So. 2d at 1044-45 (citing Miss. Code Ann. § 93-25-85(2) (Supp.1999)).[8] "As long as the issuing state retains its continuing, exclusive jurisdiction over its child support order, a registering sister state is precluded from modifying that order." **Halley**, 827 So. 2d at 47 (citing 9 ULA Uniform Interstate Family Support Act § 611 cmts. (1999)).

¶24.    Further, a complaint for registration of a foreign child support judgment in Mississippi does not require a responsive pleading. Under Sections 93-25-81 and 93-25-83 of the Mississippi Code, registration of the order does not require that litigation be commenced. However, when combined with the request to modify a support order or visitation arrangement, the pleading must be answered or defenses are otherwise waived. *See* Miss. Code Ann. § 93-25-97. Here, Young's First Amended Complaint for Registration of Foreign Judgment and for Other Relief requested the chancery court to register the Ohio judgment, give that judgment full faith and credit, and assume jurisdiction over the matter. As detailed above, Ohio maintained "a sufficient interest in the modification of its order," preventing Mississippi from assuming jurisdiction spontaneously. **Halley**, 827 So. 2d at 47.

---

[8] Although citing to the statute updated in 1999, the version applicable to the case today has the same effect as the language in **Shelnut**. Mississippi Code Section 93-25-85(2) states that "[a] registered order issued in another state is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state." Miss. Code Ann. § 93-25-85(2) (Rev. 2013).

Accordingly, Hamilton had no reason to challenge the registration of the decree; and therefore, he had no need to object to the amended complaint.

¶25.    Alternatively, Young argues that the Lee County court properly assumed jurisdiction, and the chancellor's determination that Mississippi is a more convenient forum under Mississippi Code Section 93-27-202 and 93-27-203 was appropriate.  However, as previously discussed, the chancellor's failure to request consent of the parties or to document his finding on jurisdiction in the record preserved Ohio's control over this matter.  *See **Halley***, 827 So. 2d at 52 (Court of Appeals found that the chancellor's custody modification under the UCCJEA was appropriate because it was recorded and signed by both parties and their counsel).  Moreover, because the Lee County court did not properly assume jurisdiction over the matter,  Hamilton cannot have waived his ability to challenge it.  Therefore, finding that Young's request for registration did not require a response, and the chancellor's assumption of jurisdiction was improper, we hold that Hamilton's motion to dismiss was timely filed.

> **III.    Whether Mississippi's jurisdiction in this matter can be challenged by a court in Ohio without finding that Ohio is the more convenient forum.**

¶26.    Whether the chancery court has jurisdiction to hear a particular matter is a question of law which this Court reviews de novo.  ***Miss. Dep't of Human Servs. v. Watts***, 116 So. 3d 1056, 1058 (Miss. 2012).  However, "the findings made by a chancery court sitting as a finder of fact are reviewed under the substantial evidence/manifest error standard.  ***Shearer v. Shearer,*** 540 So. 2d 9, 11 (Miss. 1989).  This standard provides that the findings of the chancellor will not be reversed if supported by substantial evidence; or that the finding will

16

be upheld unless manifestly in error." ***Stowers v. Humphrey***, 576 So. 2d 138, 140 (Miss. 1991). Because the chancellor independently made a factual, off-the-record, determination that Lee County was the more convenient forum ,the substantial-evidence standard applies to this issue.

¶27. As clearly outlined through the language of Mississippi Code Section 93-27-203 and the analysis provided under Issue I above, the chancellor's assumption of jurisdiction over this matter was not supported by the evidence and was manifestly in error. As the record fails to show that the Ohio court relinquished jurisdiction, or that the parties and the courts determined Mississippi was a more convenient forum, Young's argument fails under both the UCCJEA and UIFSA. Because the issues of jurisdiction and forum *conveniens* have been addressed thoroughly and serve as dispositive answers to the questions presented under this issue, we will not address the additional procedural arguments outlined by Young.

## CONCLUSION

¶28. The principle of comity suggests that "courts of one state or jurisdiction will give effect to laws and judicial decisions of another state or jurisdiction, not as a matter of obligation but out of deference and mutual respect." *Comity*, Black's Law Dictionary 267 (6th ed. 1990). This is the basic principle defining the constitutional requirement that state courts grant full faith and credit for the child-support and custody judgments of sister states. ***Laskosky v. Laskosky,*** 504 So. 2d 726, 729 (Miss. 1987); *see also* U.S. Const. Art. IV § 1; 28 U.S.C.A. §§ 1738A, 1738B. Without evidence of the Ohio court's waiver of jurisdiction and the parties' consent to transfer jurisdiction to the Lee County court, the chancellor's assumption of

17

jurisdiction and apparent disregard for the longstanding principle of comity cannot be affirmed. Therefore, because this Court finds that the chancellor erred in denying Hamilton's motion to dismiss, we reverse the judgment of the Lee County Chancery Court and render judgment in favor of Hamilton, dismissing Young's complaint for lack of jurisdiction.

¶29.    **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS, KING, COLEMAN, MAXWELL AND CHAMBERLIN, JJ., CONCUR. RANDOLPH, P.J., NOT PARTICIPATING.**